# United States Court of Federal Claims

No. 12-081C

(Filed: August 1, 2016)

_____

)
WARDELLE MCCLENDON, *et al.*,  )
  )
Plaintiff,  )
  )      RCFC 56; Overtime
v.  )      Compensation Claim; Fair
  )      Labor Standards Act
THE UNITED STATES,  )
  )
Defendant.  )
_____ )

*Carlos V. Leach*, Morgan & Morgan, P.A., Orlando, FL, for Plaintiff.

*Kristin B. McGrory*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**SMITH, Senior Judge**

      Plaintiffs, Wardelle McClendon, et al., brought this action against defendant, United States of America, for overtime compensation, liquidated damages, reasonable attorneys' fees and costs, and other relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1).  Plaintiffs allege that they were non-exempt Equal Employment Specialists and performed related activities for defendant.  Plaintiffs assert that, though they were paid their salaries, they were not paid for any overtime hours in accordance with the requirements of the FLSA.  For the reasons explained below, the Court denies plaintiffs' motion for summary judgment, and grants the government's cross-motion for summary judgment.

## I.      Background

### A.      Factual History

      Plaintiffs worked as Equal Employment Opportunity Counselors, GS-260-11 ("counselors"), with the Office of Risk Management (ORM) at the Department of Veterans Affairs (VA).  Plaintiffs' Motion for Summary Judgment (hereinafter "Ps' MSJ.") at 2.  The counselors' responsibilities included identifying the basis of EEO complaints filed by VA

employees, explaining the complaint and Alternative Dispute Resolution (ADR) process to complainants, and developing the record for complaint proceedings. Defendant's Cross-Motion for Summary Judgment (hereinafter "Def's. Cross-Mot.") at 6. Counselors' regularly scheduled work hours, or "tours," were based on either working a forty-hour workweek or working a compressed schedule, in which the employee worked eighty hours over a two-week pay period. *Id*. at 4. EEO counselors were expected to carry a caseload of between eight and eleven active cases per month. *Id*. at 5. Additionally, counselors were expected to handle ADR cases, which required significantly less time and oversight. *Id*.

Plaintiffs claim that they did not receive proper payment for overtime hours because defendant misclassified them as "exempt" from the FLSA from February of 2008 through February of 2011. Plaintiffs' Second Amended Complaint (hereinafter "2nd Am. Compl.") at 4. The FLSA requires all covered employers to compensate all non-exempt employees at a rate of not less than one and one half the regular rate of pay for all hours worked in excess of forty hours per workweek. *Id*. at 8.

On or about September 10, 2009, Wardelle McClendon filed a claim with the Office of Personnel Management ("OPM"), challenging his classification as an exempt employee. Ps' MSJ. at 1.[1] On February 8, 2011, the OPM issued a decision agreeing with Mr. McClendon's argument that counselors should be classified as "non-exempt" and, thus, eligible for overtime. *Id*. On April 1, 2011, the Office of Risk Management informed the counselors of this decision and asked that they submit any evidence of overtime worked during the two years preceding the OPM decision. *Id*. at 10. Many counselors submitted claims for unpaid overtime, but the majority of the claims were denied for lack of proof of overtime hours worked.[2] *Id*.

### B.    Procedural History

Wardelle McClendon filed suit on February 6, 2012, on behalf of himself and all other similarly situated counselors seeking unpaid overtime and other related damages under the FLSA, 29 U.S.C. § 207(a). An Amended Complaint was filed on March 6, 2012. Ps' MSJ. at 2. On July 27, 2012, McClendon filed a Motion for Conditional Certification.[3] *Id*. On January 24, 2013, the Court entered an Order partially granting McClendon's motion, allowing

---

[1] The Office of Personnel Management is responsible for administering the FLSA in the federal sector. *See* 29 U.S.C. § 204(f); see also *Billings v. United States*, 322 F.3d 1328, 1331 (Fed. Cir. 2003). OPM's regulations are required to "harmonize with the statute's 'origin and purpose' …as well as with the Secretary of Labor's regulations." *Billings*, 322 F.3d at 1334 (Fed Cir. 2003) (omission in original) (quoting *Zumerling v. Devine*, 769 F.2d 745, 750 (Fed. Cir. 1985)).

[2] In plaintiffs' Second Amended Complaint, plaintiffs allege that defendant denied more than 90% of all claims for unpaid overtime. 2nd Am. Compl. at 10. In defendant's Cross-Motion, defendant noted that the vast majority of claims, including those submitted by plaintiffs, were denied because they were "completely unsubstantiated." *See* Def's. Cross-Mot. at 31.

[3] The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. *See* 29 U.S.C. § 216(b).

McClendon to facilitate notice to similarly situated counselors. *Id.* As a result of that notice, twenty-one additional counselors joined in the complaint.[4] *Id.*

On May 27, 2015, the parties filed a joint motion to stay the discovery deadlines pending participation in ADR. Joint Status Report (hereinafter "JSR.") at 1. On August 5 and August 6, 2015, the parties participated in an ADR meeting with Judge Marian Horn, of the United States Court of Federal Claims. *Id.* Following ADR proceedings, seventeen of the twenty-two plaintiffs settled, and one plaintiff voluntarily removed himself from these proceedings. *Id.* Only four plaintiffs remain. *Id.*

Plaintiffs have filed a Motion for Summary Judgment, and defendant has filed its Cross-Motion for Summary Judgment. Both motions are fully briefed and ripe for review.

## II.    Discussion

### A.  Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, in order to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). The FLSA is a money-mandating statute. As such, claims may be brought pursuant to the FLSA in this Court due to the Tucker Act's conditional waiver of sovereign immunity. *See Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014).

Summary judgment is appropriate when the evidence indicates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A "genuine" dispute is one that "may reasonably be resolved in favor of either party," and a fact is "material" if it might significantly alter the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 250. In determining the propriety of summary judgment, a court will not make credibility determinations, and will draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). When both parties move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable

---

[4] The representative class consists of any individual who worked one or more weeks in the capacity of an EES, who were subjected to defendant's misclassification as exempt prior to February 8, 2011, and were thus not paid proper compensation as a result of all hours worked over forty (40) in a workweek. *See* Declarations at Ex. 3-11.

inferences against the party whose motion is under consideration." *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### B.  Overtime Compensation Claim under the Fair Labor Standards Act

Plaintiffs allege that the government violated Section 207 of Title 29 of the United States Code, which requires overtime compensation for work performed in excess of a forty-hour workweek "at a rate not less than one and one-half times the regular rate at which [an employee] is employed."  29 U.S.C. § 207.  Compensable work under the FLSA includes work that is "suffered or permitted."  29 U.S.C. § 203(g).  In order to prevail on a FLSA claim for an overtime activity suffered or permitted to be performed, plaintiffs must carry their burden of proof on all of the elements of the particular claim.  *See Bull v. United States*, 68 Fed. Cl. 217 (2005).

First, plaintiffs must establish that each activity for which overtime compensation is sought constitutes "work."  For an activity to constitute work, plaintiffs must prove that the activity was (1) undertaken for the benefit of the employer, 5 C.F.R. § 551.401(a); (2) known or reasonably should have been known by the employer to have been performed, 5 C.F.R. § 551.104; and (3) controlled or required by the employer, *e.g.*, 5 C.F.R. § 551.402(a).

Second, plaintiffs must establish that the hours of work performed are actually, rather than theoretically, compensable.  For work to be compensable (1) the quantum of time claimed by plaintiffs must not be *de minimis*, and the work (2) must be reasonable in relation to the principal activity.  *Bull*, 68 Fed. Cl. 217.  If an employer has kept accurate records, a plaintiff's burden of establishing the reasonableness of the time claimed is easily discharged.  *Id.* However, if the employer's records are inaccurate or inadequate, the employee needs to produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Id.*

In an effort to substantiate their claims for overtime compensation, plaintiffs argue that they are entitled to overtime compensation because their activities were known or reasonably should have been known to their employer due to a number of factors.  These factors include the heavy caseloads they were given, emails sent from counselors, and a Training Needs Analysis from 2009.  Ps' MSJ. at 19-21.  This Court does not find these arguments persuasive.

The undisputed facts of this case establish that defendant neither knew nor should have known that plaintiffs were performing the activities in question.  As an initial matter, plaintiffs have stated on several occasions that none of the EEO counselors told ORM management that they were working overtime to meet the requirements of their jobs.  Appendix to Defendant's Cross-Motion (hereinafter "A__.") at 11 (Cullen Tr.), p. 18 at 11-14 ("we wouldn't ask for overtime for we knew the answer to that request.  The answer was no."); A12 (Cullen Tr.) p. 25 at 18 – p. 26 at 4 ("Q.  Did you ever talk to your supervisors about working in the car, the fact that you were working during your car pooling, that you were working at home?  A.  I don't recall having that specific conversation with them about that.  They would see me get in the car pool to depart and know full well I was a passenger and I think it would be reasonable

for them to infer for him to make deadline – me, Frank Cullen, that I'd be doing working [*sic*] in the car as a passenger."); A51 (Pope Tr.), p. 25 at 1 – p. 26 at 7 ("Q.  Did you ever have any conversations with Ms. Strub about overtime?  A.  I don't recall.  Q.  Did you ever have any conversations with Ms. Woods about working overtime?  A.  I don't recall any").  Given plaintiffs' own statements made during discovery, this Court does not find that defendant knew or reasonably should have known that plaintiffs were working overtime hours.

Plaintiffs also point to a 2009 Training Needs Analysis (TNA).  Ps' MSJ. at 21.  This thirty-four-page assessment was reported by ORM's training department on August 7, 2009. A67-100.  The purpose of the assessment was to identify ways to improve the performance of EEO case managers, investigators, and counselors.  *Id.*; A23 (Henson Tr.), p. 38 at 25 – p. 39 at 19.  The assessment concluded that "[…] most counselors carry a caseload twice the caseload suggested in the EEO Counselor performance plan."  The TNA also indicated that unidentified "high producers" reported working 10-12 hours per day.  A96-97.  Plaintiffs allege that these parts of the assessment should have raised "red flags" to defendant.  Plaintiffs' Response to Defendant's Cross-Motion (hereinafter "Ps' Resp.") at 9.  However, this argument fails for several reasons.

First, even assuming that plaintiffs carried twice the caseload suggested, an unspecified number of these cases were handled through the ADR process, which requires significantly less work per case.[5]  Second, the quantity of cases does not necessarily correlate with the number of hours worked, as each case varies in the amount of time it requires.  Third, plaintiffs have not established that they were "high producers" who allegedly worked 10-12 hours a day. Plaintiffs claim that ORM should have known they were "high producers" based on cash awards they received for their performance.  Ps' Resp. at 4-5 (referencing Ps' Resp. Exhibit (hereinafter "Ex.") A (McClendon Decl., ¶ 14), B (Lenox Decl., ¶ 12), C (Cullen Decl., ¶ 13). However, classification as high producers does not establish that plaintiffs actually worked 10-12 hours a day.  As such, the 2009 TNA is not actual evidence that plaintiffs worked any overtime hours.

Additionally, plaintiffs claim that changes in staffing levels from 1998 through the claim period are evidence that they worked overtime hours.  Ps' Resp. at 3-4.  For the same reasons as noted above, this argument is flawed.  Plaintiffs cannot validly point to changes in staffing levels as evidence that they worked extra hours.  This argument continues to ignore the fact that some of these cases were being handled through the ADR process.  A34 (Labombarda Tr.), p. 38-114.  Moreover, even if this Court assumes the changes in staffing levels resulted in an increase in plaintiffs' workload for the period in question, a workload increase does not

---

[5] *See* Def's. Cross-Mot. at 5 (stating that "while an EEO counselor may appear, at times, to carry a case load over the standard 8 to 11 cases, a counselor would only be actively working the standard number, A7 (Burton Tr.), p. 43 at 23 – p. 44 at 7, as [cases] in ADR required minimal, if no, work by the counselors").

provide evidence of or support for a reasonable inference that plaintiffs actually worked overtime hours.

Plaintiffs next contend that their emails prove they worked more than forty hours in a given week. Ps' MSJ. at 20. This Court does not agree. Again, plaintiffs are asking this Court to make inferences unsupported by the record. Plaintiffs highlight several emails with timestamps outside of their normal tour hours as evidence they were working extra hours. However, plaintiffs have not provided any evidence that they did not alter their regular work day on any of these occasions. Absent such information, it is impossible for this Court to determine that those emails were sent while the plaintiffs were working overtime.

Plaintiffs' argument that their emails provide conclusive evidence of overtime is unpersuasive. Mr. McClendon could only provide six emails sent outside of his regular tour of duty. Two were sent after his normal workday was over, and four emails were sent mere minutes prior to the start of his tour. Ps' Ex. V. at 2, 5, 14, 16, 19, 23, 26, 34, 36. Mr. Lennox could only provide three emails with timestamps outside of his regular tour of duty, all of which were sent six minutes or less before his normally scheduled tour began. Ps' Ex. W at 2, 67, 71, 73. Mr. Cullen only provided five emails that were sent outside his tour of duty. Three of the emails he sent to himself. By his own admission, one of the emails might have been sent during his regularly scheduled work day. Mr. Cullen sent the final email from his personal account to his work account after his regularly scheduled tour. Neither of the latter two emails were sent or copied to Cullen's supervisors. *See* A9-10 (Cullen Tr.), p. 9 at 23; p. 10 at 2-3; p. 5. Plaintiffs cannot identify any emails from Ms. Pope that were sent outside of her tour of duty.

In sum, plaintiffs have failed to establish that any of their alleged activities constitute "work" as defined by the Code of Federal Regulations. Additionally, plaintiffs have failed to establish that any of these alleged activities were more than *de minimis*. The record as a whole does not establish that plaintiffs actually worked compensable overtime hours. This Court cannot award overtime compensation based solely on plaintiffs' unsubstantiated allegations. As such, plaintiffs' claim for overtime compensation must be denied.

### C.  Statute of Limitations and Liquidated Damages

Plaintiffs argue that they are entitled to a three-year statute of limitations for unpaid overtime compensation. Ps' MSJ. at 28. While the FLSA provides a scenario in which the statute of limitations for damages may be extended in actions "arising out of a willful violation," an extension of the statute of limitations is contingent upon a finding that plaintiffs are, in fact, entitled to overtime compensation. 29 U.S.C. § 255(a). As the plaintiffs here have not met their burden of proof in establishing that they are entitled to overtime compensation, this Court shall not evaluate plaintiffs' arguments as to the statute of limitations any further.

Plaintiffs also argue that they are entitled to liquidated damages. An award of liquidated damages is typically contingent upon a finding that the plaintiffs are entitled to overtime compensation and is entirely at the discretion of this Court. The undisputed facts do not establish that the government acted in bad faith in originally classifying the counselors as

exempt.  As such, plaintiffs are not entitled to liquidated damages.

**III.    Conclusion**

For the reasons set forth above, plaintiffs' MOTION for summary judgment is **DENIED**.  Defendant's MOTION for summary judgment is **GRANTED**.  The Court directs the Clerk of Court to enter judgment for the Defendant.

**IT IS SO ORDERED.**

_s/ Loren A. Smith_

Loren A. Smith,
Senior Judge